Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| AILEEN PÉREZ LÓPEZ Y CHRISTIAN I. CÁTALA FLORES<br><br>Apelantes<br><br>v.<br><br>UNIVERSIDAD INTERAMERICANA DE PUERTO RICO<br><br>Apelada | KLAN202300867 | Apelación Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>BY2021CV03779<br><br>Sobre:<br>Discrimen en el trabajo, violación de derechos constitucionales, despido (Ley 80) |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de noviembre de 2023.

El 27 de septiembre de 2023, Aileen Pérez López y Christian I. Cátala Flores (en adelante los apelantes) comparecieron ante este Tribunal de Apelaciones mediante *Recurso de apelación* en el que nos solicitan la revocación de la *Sentencia* emitida el 8 de junio de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario).[1] Por virtud del aludido dictamen, el TPI acogió íntegramente la *Moción solicitando sentencia sumaria* sometida en el caso por la Universidad Interamericana de Puerto Rico (en adelante Universidad o parte apelada) y ordenó la desestimación de la demanda de epígrafe.

Evaluado el expediente judicial, los documentos ahí contenidos, así como los argumentos planteados por las partes ante nuestra consideración, **confirmamos** el dictamen apelado. Veamos.

---

[1] Esta, fue notificada al día siguiente.

Número Identificador

SEN2023 _____

I

El pleito de epígrafe trata sobre una reclamación por alegado despido injustificado en la que, en síntesis, los apelantes arguyeron ser empleados desde hace años de la Universidad; que para el mes de marzo de 2021 se les notificó del establecimiento en la Universidad de una política de vacunación para el COVID-19, la cual hacía mandatorio el vacunarse contra tal enfermedad para retener su empleo; y que se reconocieron dos excepciones-una médica y una religiosa- al mandato de vacunación. Asimismo, según alegaron, pese a que Aileen Pérez López reclamó que por sus convicciones había determinado no vacunarse y a que Christian I. Cátala Flores impugnó mediante abogado la ilegalidad de dicha imposición, a ambos no se les renovó su contrato de empleo, en contra de la expectativa de continuidad que han tenido de su trabajo.

Así, y tras impugnar la legalidad de la imposición de vacunación y la corrección de la información en la que esta descansa, en su demanda los apelantes reclamaron que el requisito mandatorio de vacunación contra el COVID-19 para retener empleo impuesto por la Universidad, constituyó una violación de sus derechos constitucionales y estatutarios, sin siquiera ofrecer el acomodo razonable por creencias religiosas que nuestro ordenamiento dispone en la legislación laboral vigente. En la alternativa, peticionaron que se determinara que debido a la expectativa de empleo que tenían, la relación de empleo entre las partes era una de tiempo indefinido y que, por tanto, la no renovación del contrato de empleo por no vacunarse, sin ofrecer medidas de acomodos razonables o menos honorosas constituyó un despido injustificado que debe ser renumerado conforme a la Ley 80, *infra.*

El 15 de noviembre de 2021, la Universidad contestó la *Demanda.* Al así hacerlo, negó que la renovación por años de los contratos de empleo de los apelantes creara una expectativa de retención. Esto, señaló, debido a que

estos trabajan para un programa especial sobre el que todos los años debe someterse propuesta y aprobarse la misma. Asimismo, aseveró que debido a que los apelantes fueron empleados a tiempo definido, la no renovación de sus contratos no constituyó despido injustificado, según la Ley 80. Por otra parte, afirmativamente alegó que como patrono privado, tenía la facultad de establecer las normas que estimar convenientes para la operación de su empresa y que la imposición de la vacunación objeto de controversia se encuentra dentro de dicha facultad. Por ello, y debido a que los apelantes no se acogieron a alguna de las excepciones que reconoció para el requisito de vacunación compulsoria, aseveró que la determinación de no renovarles el contrato fue una adecuada.

Luego de varios trámites procesales que no son necesarios discutir, el 2 de mayo de 2023, la Universidad sometió *Moción solicitando sentencia sumaria* en la que propuso que no existía controversia sobre 39 hechos. Basada en tales hechos, y los documentos que acompañó para fundamentar los mismos, ante la negativa de los apelantes a vacunarse contra el COVID-19, en incumplimiento con las normas internas que a tales efectos se establecieron, negó que hubiese violentado norma legal alguna al no renovar sus contratos de empleo. Afirmativamente, argumentó que nada le obligaba a así hacerlo; que su acción no constituía un despido; y que, aun si lo hubiese sido, la razón que motivó su decisión fue el incumplimiento por parte de los apelantes de las normas sobre vacunación compulsoria que la Universidad estableció.[2] Por todo esto, solicitó al tribunal que declarara No

---

[2] En apoyo a su moción, la Universidad sometió los siguientes documentos: (1) Declaración Jurada suscrita por Evelyn Torres Pagán, Directora de Recursos Humanos del Recinto de San Germán de la Universidad Interamericana de Puerto Rico; (2) correo electrónico del 3 de junio de 2021 remitido por Evelyn Torres Pagán a Aileen Pérez López, en recordatorio a que no se ha recibido la documentación requerida para exclusión de vacuna contra el COVID-19; (3) correo electrónico remitido por Evelyn Torres Pagán a Aileen Pérez López, en la que se indica, entre otras cosas, que "aquellos colaboradores que han decidido no vacunarse por los motivos esbozados en la comunicación del 10 de marzo de 2021 por el Lcdo. Manuel J. Fernós, Presidente, deberán someter una certificación oficial de la entidad o el facultativo que así lo valide."; (4) Declaración Jurada suscrita por Darlin J. Torres González, Directora de Recursos Humanos del recinto Metropolitano de la Universidad Interamericana de Puerto Rico; (5) copia de comunicación dirigida a todo el personal docente y no docente, suscrita por Manuel J. Fernós, Presidente con fecha del 10 de marzo

Ha Lugar la demanda, así como la imposición de costas y honorarios de abogado a su favor.

El 22 de mayo de 2023, los apelantes sometieron *Moción en solicitud de término adicional para la presentación de varias mociones*. En esta, informaron al foro primario que se encontraban preparando una enmienda a la Demanda, así como un escrito bajo la Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.6. Además, y según se anuncia en su título, solicitaron que se les concedieran 10 días adicionales para cumplimentar y someter las mociones que estaba preparando.[3] El término solicitado fue concedido mediante *Orden* del 23 de mayo de 2023.

Así las cosas, habiendo expirado el plazo dado, el 8 de junio de 2023, la Universidad sometió una *Moción solicitando que se dé por sometida sin oposición Moción de sentencia sumaria presentada por la Universidad Interamericana de Puerto Rico.* Ese día, los apelantes mediante escrito indicaron tener preparada su oposición a la solicitud de sentencia sumaria, más peticionaron que se les concediera hasta el 14 de junio de 2023 para poder someterla acompañada de las declaraciones juradas que sirven de apoyo a esta, las que aguardaban recibir próximamente.[4] Al día siguiente, el foro primario emitió la *Sentencia* apelada en la que acogió íntegramente la solicitud de sentencia sumaria que la Universidad presentó en el caso y ordenó la desestimación de la demanda de epígrafe en su totalidad.

El mismo día en que se dictó la sentencia, los apelantes sometieron una *Moción de reconsideración y en oposición a solicitud de sentencia sumaria y*

---

de 2021; (6) Orden Administrativa Núm. 2021-509; (7) Orden Administrativa Núm. 2021-509B; (7) *Sentencia* del 23 de diciembre de 2022 del Tribunal de Apelaciones de Puerto Rico en el caso <u>Israel Cruz Jusino v. Universidad Interamericana de Puerto Rico</u>, KLAN202200920; (8) porciones de la transcripción de la deposición tomada a Aileen Pérez López del 27 de enero de 2022 (págs. 26-27, 34, 11-13, 15-16, y 39-40); (9) porciones de la transcripción de la deposición tomada a Christian Cátala Flores el 27 de enero de 2022 (págs. 8-9, 11, 6, 10-13, 11-12 y 23).

[3] En el escrito, los apelantes manifestaron haberse comunicado con la representación legal de la Universidad y que esta indicó no tener reparo con lo solicitado.

[4] Véase *Moción en solicitud de breve término adicional para la presentación de su escrito en oposición a la solicitud de sentencia sumaria de la parte demandada*, págs. 168-169 del Apéndice.

*solicitud para que se continúe el descubrimiento de prueba.* Allí, además de consignar las razones por las cuales no sometieron su oposición a tiempo, expusieron por qué no podía dictarse sentencia sumaria en el caso. En síntesis, argumentaron que en el presente caso existía controversia en cuanto a la naturaleza de la relación entre la Universidad y ellos, ya que, pese a que suscribían anualmente un contrato de empleo definido, la relación real entre las partes era en realidad una de patrono-empleados. Siendo ello así, el caso no se trataba de la no renovación de un contrato, sino de un despido.

De igual forma, en el discutido escrito los apelantes cuestionaron la autoridad del entonces presidente de la Universidad para establecer la vacunación compulsoria contra el COVID-19 como requisito de empleo, así como cuán adecuado fue el proceso establecido para la presentación y evaluación de las solicitudes de excepción a la obligatoriedad de la vacuna. De otra parte, y como parte de su oposición a la resolución sumaria del pleito, los apelantes debatieron que los actos de la Universidad transgredieron su derecho a la intimidad por tratarse de la implementación forzosa de una política de vacunación que no admite excepciones. Por último, y al amparo de la Regla 36.6 de Procedimiento Civil, *supra,* los apelantes plantearon al TPI que en el pleito se hacía necesario brindarles oportunidad de obtener "información a través de declaraciones juradas y deposiciones a testigos, así como evidencia documental pertinente a la controversia sobre las relaciones laborales entre la demandada y los codemandantes, la política de vacunación compulsoria de la demandada, así como la existencia o inexistencia de alguna parte indispensable para la resolución del caso; asuntos medulares en este caso." En atención a ello, señalaron que en una fecha reciente a la moción se recibió la contestación a un segundo interrogatorio y producción de documentos que confirmó que el presidente de la Universidad no consultó con la Junta de Síndicos la

implantación de las políticas y los cambios a los reglamentos y las condiciones de empleo de los empleados.[5]

Por estas, y demás razones allí consignadas, los apelantes solicitaron al foro primario que, ante la realidad de que no se les permitió oponerse cuando hubo razón justificada para el retraso en el que se actuó, que en el caso quedaba descubrimiento de prueba pendiente de hacer y que existían controversias reales tanto sobre la naturaleza de la relación entre la Universidad y ellos como de la justificación de su despido, debía reconsiderar el dictamen emitido.[6]

Atendido el escrito sometido por los apelantes, el foro primario concedió término a la Universidad para expresarse. En cumplimiento, el 19 de junio de 2023, la Universidad sometió *Réplica a Moción de reconsideración de Sentencia y en oposición a solicitud de sentencia sumaria y solicitud para que se continue el descubrimiento de prueba.* En ella, primeramente, señaló que la oposición a la sentencia sumaria que pretendían introducir los apelantes mediante reconsideración era tardía, catalogándola como improcedente en derecho. En segundo lugar, negó la existencia de las controversias alegadas por los apelantes. Sobre esto, además de reclamar que la naturaleza de la relación de los apelantes con la Universidad era clara e inclusive admitida por ellos mismos durante su deposición, destacó que los apelantes, pese a

---

[5] Es menester señalar que junto a su escrito los apelantes no sometieron copia de la contestación a descubrimiento de prueba que alega confirma lo aseverado, ni ninguna otra prueba a tales efectos.

[6] En apoyo a su moción, los apelantes sometieron porciones de la transcripción a la deposición tomada al Lcdo. Manuel J. Fernós López-Cepero el 30 de enero de 2023 (págs. 2-6, 11-12, 14, 23-27, 30, 4145, 85, 136-140, 167-169); porciones de la transcripción de la deposición tomada a Aileen Pérez López el 27 de enero de 2022 (págs. 2-9, 11-16, 27-30, 34-36; porciones de la transcripción de la deposición tomada a Christian Cátala Flores el 27 de enero de 2022, (seis páginas numeradas con el 2; cuatro páginas numeradas con el 10); *Religious Accommodation Request Form*; página 28 de la *Sentencia* emitida por el Tribunal de Apelaciones en el caso KLAN202100796; y documentación médica concerniente al representante legal de los apelantes.

De igual forma, el 13 de junio de 2023 instaron *Escrito al expediente judicial* en el que sometieron una *Declaración Jurada* suscrita por Aileen Pérez López, así como otra suscrita por Christian I. Cátala Flores y solicitaron que estas se integraran a su solicitud de reconsideración y oposición a moción de sentencia sumaria. El 14 de junio de 2023 el foro primario emitió *Orden* declarando este escrito No Ha Lugar. No obstante, ante la reconsideración sometida por los apelantes en su momento, determinó evaluar las mismas.

levantar distintos argumentos a los fines de crear una controversia, no proveyeron evidencia alguna mediante la cual efectivamente controvirtieran que estos eran empleados a término definido y exentos como se demostró.

A su vez, la Universidad negó que la no renovación del contrato respondiera a razones discriminatorias. Particularmente, afirmó que la decisión de no renovar el contrato de empleo de los apelantes se debió a que estos, pese a haber sido notificados que la vacuna contra el COVID-19 sería un requisito compulsorio de empleo, no lo hicieron ni tampoco sometieron un documento que certificara una de aquellas razones que se reconoció permitiría exceptuarles de este. De hecho, apuntó que las admisiones bajo juramento de los propios apelantes durante la deposición que les fue tomada demostraron que su negativa a vacunarse no respondió a una creencia o práctica religiosa sincera. El 21 de junio de 2023, los apelantes sometieron su *Dúplica a Réplica a "Moción de reconsideración de sentencia y en oposición a solicitud de sentencia sumaria y solicitud para que se continúe el descubrimiento de prueba.*

Evaluadas todas estas mociones, el 25 de agosto de 2023 el TPI emitió *Resolución* mediante la cual declaró No Ha Lugar la solicitud de reconsideración de los apelantes. Inconformes, el 27 de septiembre del año en curso estos instaron el recurso de epígrafe y adujeron que el foro primario se equivocó al:

> […] no conceder oportunidad a la parte recurrente para presentar su oposición a la moción de sentencia sumaria y no tomar en consideración que el descubrimiento de prueba no había concluido, que la parte advir[ti]ó enmendaría la Demanda y que en todo momento indicó comparecería en oposición.
>
> […] actuar en claro prejuicio de las controversias planteadas.
>
> […]determinar que los requerimientos de vacuna en el lugar de empleo de los demandantes eran medidas necesarias y determinantes para evitar la propagación de la pandemia en sus facilidades sin recibir prueba pericial al respecto.

[…] determi[nar] que no existían controversias sobre la naturaleza de la clasificación de los recurrentes como empleados regulares sin término.

[…] determinar que el patrono puede imponer cualquier medida sanitaria en el taller de trabajo incluyendo aquellas que invaden y violentan derechos a la intimidad del empleado.

[…] al concluir que no existió cont[ro]versia en que se le garantizara a los recurrentes un proceso claro y específico de cómo presentar sus exenciones a vacunas.

Atendido el recurso, el 3 de octubre de 2023, emitimos *Resolución* donde establecimos que la Universidad debía comparecer dentro del término de 30 días que establece la Regla 22 de nuestro Reglamento, 4 LPRA Ap. XXII-B R. 22. En cumplimiento con ello, el 30 de octubre de 2023, presentó su *Alegato en oposición a apelación*. Así, beneficiándonos de la comparecencia de todas las partes, resolvemos.

**II**

-A-

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo concerniente a la moción de sentencia sumaria- mecanismo procesal que se utiliza en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, no ameritan la celebración de un juicio en su fondo. Cruz Vélez v. CEE, 206 DPR 694 (2021) al citar a Mejías Montalvo v Carrasquillo Martínez, 185 DPR 288, 299 (2012) y otros. Esta regla, establece que un demandante podrá presentar dicha moción siempre y cuando esté fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Íd.*, al mencionar a Bobé v. UBS Financial Services, 198 DPR 6, 20 (2017) y demás casos allí citados.

La Regla 36.2 y 36.3 del discutido cuerpo reglamentario, 32 LPRA Ap. V, R.36.2-36.3, disponen los requisitos de forma que deberá observar la parte promovente de una solución por la vía sumaria. La última de estas, debe ser cumplida también por quien se opone a que se dicte sentencia

sumariamente. En particular, al contestar una moción de sentencia sumaria, el promovido deberá presentar una relación concisa y organizada de aquellos hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *Íd.*, citando a Bobé v. UBS Financial Services, *supra*, a la pág. 21; Mun. de Añasco v. ASES et al., 188 DPR 307, 326 (2013) y Ramos Pérez v. Univisión, 178 DPR 200, 221 (2010). También, enumerará los hechos que no están en controversia, indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible donde se establezcan los mismos. *Íd*. Ello es así, puesto que la parte que se opone a que se dicte sentencia sumaria no puede descansar en meras alegaciones. Meléndez González v. M. Cuebas, 193 DPR 100, 136 (2015). Al final de cuentas, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una que permita concluir la existencia de una controversia real y sustancial sobre hechos relevantes y pertinentes. Abrams Rivera v. ELA, 178 DPR 914, 932, 934(2010) al citar a Ramos Pérez v. Univisión, *supra.*

Ahora, el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria no implica necesariamente que dicha moción procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos esenciales y materiales. Cruz Vélez v. CEE, *supra,* al citar a Mun. de Añasco v. ASES et al., *supra*, a la pág. 327 y otros. Por tanto, un tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas -- si las hubiere -- surge que no existe una controversia real sustancial en cuanto a ningún hecho material y solo restaría por resolver una controversia de estricto derecho. Véase, Regla 36.3

de Procedimiento Civil, *supra*, y Pepsi-Cola Manufacturing v. Mun. Cidra et al., 186 DPR 713, 755-56 (2012).

En cuanto a la revisión judicial de la procedencia de una moción de sentencia sumaria, es harto conocido que los tribunales apelativos estamos en la misma posición que el TPI. Cruz Vélez v. CEE, *supra,* a la pág. 720. Por ello, "[e]n el proceso de evaluar una sentencia sumaria dictada por el foro primario, los tribunales revisores están llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3[ …]. Además, deberán comprobar que, si existen hechos en controversia, el juez que dictó sentencia sumaria los haya consignado. En el caso de que no se encuentren hechos materiales en controversia, igualmente procede revisar *de novo* si se aplicó el Derecho correctamente a la controversia planteada". Rivera Matos v. ELA, 204 DPR 1010, 1025 (2020).

-B-

El despido injustificado

La Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 del 30 de mayo de 1976, *supra,* ofrece una valiosa protección a aquellos individuos empleados y contratados por tiempo indeterminado a ser remunerados de ser despedidos injustificadamente de su trabajo. Este resarcimiento se conoce comúnmente como "mesada". León Torres v. Rivera Lebrón, *supra,* citando a González Méndez v. Acción Social et al., 196 DPR 213 (2016) y otros allí citados.

La Ley 80 no establece qué constituye un despido injustificado. No obstante, el aludido estatuto informa sobre varios escenarios que pueden liberar al patrono de responsabilidad. Así pues, se reputará justa causa para el despido si el empleado: (1) ha exhibido un patrón de conducta impropia o desordenada; (2) no ha cumplido con sus labores de manera eficiente, ha realizado su trabajo tarde o negligentemente o en violación a las normas aplicables, o (3) ha violado reiteradamente aquellas reglas y reglamentos

razonablemente establecidos para la operación del establecimiento y los cuales le han sido suministrados oportunamente. Id. De igual forma, se entenderá que el despido fue justificado si sucede a consecuencia de: el cierre total, temporero o parcial de las operaciones del establecimiento; los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público; o reducciones en empleo necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 29 LPRA Sec. 185b.

Aun así, es importante recordar que las circunstancias representativas de justa causa enumeradas en el discutido estatuto son meros ejemplos de acontecimientos asociados a un despido. Ello así, ya que este no puede prever el universo de incidencias que pueden surgir en un entorno laboral y que desemboquen en la cesantía de un empleado. León Torres v. Rivera Lebrón, *supra*, citando a SLG Torres Matundan v. Centro Patología, 193 DPR 920 (2015).

-C-

En nuestro ordenamiento jurídico es norma legal que el criterio del juez de la corte primaria prevalezca si se funda en base razonable y no resulta perjudicial a los derechos sustanciales de una parte. Además, como regla general no entraremos o sustituiremos el discernimiento utilizado por el juez que atiende los procesos, salvo, que haya incurrido en prejuicio, parcialidad, error manifiesto o error en el ejercicio de su discreción. Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 709 (2012), Lluch v. España Services Sta., 117 DPR 729, 745 (1986).[7]

---

[7] Un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida

De otra parte, cuando se alega que en la actuación judicial se incurrió en pasión, prejuicio o parcialidad, los foros apelativos debemos verificar primordialmente si el juez de Primera Instancia cumplió con su función de adjudicar de manera imparcial, pues solo así podrán descansar en sus determinaciones de hechos. En cuanto al error manifiesto, este ocurre cuando, de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que se cometió un error, aunque haya prueba que sostenga las conclusiones de hecho del tribunal. Así pues, se incurre en error manifiesto cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. Esto, particularmente cuando el foro primario descansa exclusivamente en una parte de la prueba, cuando hubo otra que la contradice. Ahora bien, el error que hace que no se guarde deferencia al foro sentenciador debe ser manifiesto. Gómez Marquez v. Periodico El Oriental, Inc., 203 DPR 783 (2020). Entiéndase, un foro apelativo no debe elaborar sobre la pasión, el prejuicio y la parcialidad si no puede fundamentar que esto ocurrió en el caso ante su consideración. Quien señale que el juzgador actuó mediante pasión, prejuicio o parcialidad debe sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia. Id.

III

La exposición narrativa del tracto procesal del caso realizada en el acápite I de esta sentencia demuestra que, mediante la discusión conjunta de sus distintos señalamientos, los apelantes le imputan al foro primario fallar al acoger la solicitud de sentencia sumaria de la parte apelada y dictar sentencia en el caso desestimando su causa de acción. Este fallo se atribuye, específicamente, porque la resolución sumaria decretada: se hizo sin que se

---

en sala e incluso antes de que se someta prueba alguna. Pueblo v Rivera Montalvo, 205 DPR 352 (2020).

les brindara oportunidad de oponerse a ello, obvió que el descubrimiento en el caso no había concluido, determinó que la vacunación compulsoria establecida por la Universidad era una medida razonable sin contar con prueba pericial que así lo demostrara, e ignoró las controversias sobre hechos materiales que existían y fueron señaladas en su moción de reconsideración y oposición a sentencia sumaria.

A tales efectos, al discutir su primer, segundo y cuarto error, reclaman prejuicio por parte de la juzgadora de hechos por haber resuelto la moción de sentencia sumaria sin permitirles oponerse. Así, aunque aceptan que luego de haber expirado el plazo disponible para someter su oposición no solicitaron una prórroga adicional para esto, manifiestan que no entendieron necesario hacerlo debido a la comunicación efectiva que sostuvo con el abogado de la Universidad. A su vez, exponen no poder concebir que, "ante el marco procesal del caso, donde se determinó el término para completar el descubrimiento de prueba y la fecha de conferencia con antelación al juicio señalada y habiendo cumplido con las órdenes, señalamientos y demás procesos, el tribunal en claro abuso de su discreción", les negara poder oponerse a la sentencia sumaria. Igualmente, afirman que los documentos sometidos por la Universidad no eran suficientes para resolver que estos eran empleados a tiempo definido. En contrario, haciendo referencia a porciones de la deposición del Lcdo. Fernós, argumentan que en el caso era claro que esa no era su clasificación verdadera, ya que existía una fuerte expectativa de continuidad de empleo en el proyecto en el que trabajaron para la Universidad. Ante ello, exponen que, "[e]l ver que el tribunal no tuvo interés alguno en dar esta oportunidad nos reafirma en que el mismo de alguna manera mantuvo un prejuicio y posible parcialidad contra los recurrentes por el hecho de no haberse sometido a la política de vacunación.".

De otra parte, y en la discusión conjunta de su tercer y quinto error, los apelantes impugnan la conclusión del TPI a los efectos de que las medidas impuestas por la Universidad eran necesarias y determinantes para evitar la **propagación** de la pandemia en sus facilidades. De igual forma, cuestionan que se valide que un patrono pueda imponer cualquier medida sanitaria en el taller de trabajo, invadiendo y violentando así el derecho a la intimidad de sus empleados. Con tal propósito, afirman poder someter amplia literatura que evidencia que la vacuna no evita la **propagación**, sino que este hecho es meramente asumido por el foro primario. De igual forma, asevera que la imposición de vacuna decretada por la Universidad es una intromisión a la integridad corporal de sus empleados que no está autorizada por ley, ya que no existe ninguna legislación que permita a un patrono a obligar a un empleado para poder preservar su empleo que tenga que inyectar o introducir en su cuerpo una sustancia o producto médico sin que dicho individuo voluntariamente y con conocimiento del acto y sus consecuencias asienta a utilizarlo.

Por último, los apelantes exponen al discutir su sexto y último señalamiento de error, que la resolución sumaria del caso es errada por no considerar que la Universidad no les proporcionó una opción o vehículo real que les permitiera manifestar sus creencias religiosas, "ya que la intención era despedir a todo aquel que no se vacunara". Así pues, y ante estos diferentes señalamientos, los apelantes reclaman que es imperativa la revocación de la sentencia dictada en el caso.

La Universidad, en cambio, sostiene la corrección de la sentencia dictada al discutir que los argumentos sobre prejuicio y parcialidad señalados por los apelantes son inmeritorios y catalogan como abuso de discreción la correcta aplicación de las disposiciones de la Regla 30 de Procedimiento Civil, *supra*. De igual manera, asevera que la norma de vacunación contra el COVID-19 que adoptó, está dentro de las facultades y

prerrogativas que la legislación laboral vigente le reconoce a todo patrono privado. Por último, y en cuanto a la alegada existencia de controversias argumentada por los apelantes, la Universidad sostiene que la documentación que presentó en apoyo a su solicitud de sentencia sumaria corroboró los hechos incontrovertidos propuestos. Así, reclama que la misma fue adecuada y que, en virtud de esta, quedó demostrado que: (1) los apelantes eran empleados a término definido; (2) dentro de las facultades que la Ley le reconoce, la Universidad estableció como norma la vacunación compulsoria contra el COVID-19; (3) se establecieron unas excepciones a la vacunación compulsoria; (4) los apelantes no se vacunaron contra el COVID-19; (5) los apelantes tampoco se acogieron a alguna de las excepciones a la vacunación contra el COVID-19 que reconoció. Por todo esto, aseveró que la determinación apelada fue una correcta y debía ser confirmada. Evaluado el expediente, a continuación, explicamos las razones por las que coincidimos.

La sentencia apelada comienza estableciendo que la *Moción solicitando sentencia sumaria* de la Universidad no encontró oposición por parte de los apelantes. Según arriba detallamos, los apelantes comienzan sus distintos señalamientos de errores reclamando que tal determinación evidencia el prejuicio y parcialidad del foro primario contra ellos. Ello así, según ellos, porque, aunque reconocen que no sometieron su oposición a tiempo, ni solicitaron una extensión de la prórroga sometida para esta encomienda, ya habían anunciado en el caso que iban a expresarse en cuanto a la moción dispositiva. A su vez, reclaman que al haberse resuelto sumariamente el caso cuando el descubrimiento de prueba no había concluido queda también demostrado el prejuicio y la parcialidad del TPI. Igualmente, señalan que durante el trámite del pleito nunca incumplieron con alguna orden del foro primario o los términos reglamentarios, por lo que no puede justificarse de forma alguna que- ante su primer

incumplimiento a algún término en el caso- se emita sentencia desestimatoria.

Hemos evaluado estos argumentos y encontramos que los mismos no cumplen con la contundencia requerida en nuestro ordenamiento jurídico para demostrar el prejuicio y la parcialidad que reclaman insistentemente en su recurso de forma tal que nuestra intervención con el dictamen impugnado se justifique. Para comenzar, los propios apelantes admiten no haberse opuesto a la sentencia sumaria dentro del término establecido por las Reglas de Procedimiento Civil, ni dentro de la extensión de tiempo que el foro primario les concedió a tales efectos. Asimismo, aceptan que no acudieron al tribunal a pedir una extensión adicional a la previamente concedida.[8]

A continuación, tras una lectura de la *Moción de reconsideración y en oposición a solicitud de sentencia sumaria y solicitud para que se continúe el descubrimiento de prueba,* no apreciamos que allí adujeran razones particulares válidas que hicieran meritoria la posposición de la adjudicación del escrito dispositivo hasta que el descubrimiento de prueba finalizara. Recordemos que, si bien es cierto que los tribunales pueden discrecionalmente bajo la Regla 36.6 de Procedimiento Civil, *supra,* posponer la evaluación de una moción de sentencia sumaria y permitir que concluya el descubrimiento de prueba o se realice descubrimiento adicional, tal determinación se alcanzará si, "de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición".[9]

---

[8] Aun cuando comprendemos la situación médica de su representación legal informada al TPI en su reconsideración, así como la incomodidad que la dolencia que padecía en el hombro le podía causar, ello- ni ninguna otra razón dada- excusa el que no se opusieron a la sentencia sumaria dentro del plazo concedido por el tribunal, ni solicitaron una prórroga adicional a la ya dada.

[9] Véase, Regla 36.6 de Procedimiento Civil, *supra.*

Por último, el hecho de que durante el trámite del pleito los apelantes hayan comparecido a tiempo a someter sus escritos no le relevaba de comparecer oportunamente a oponerse a la moción de sentencia sumaria sometida. Mucho menos, impedía que el TPI resolviera sin el beneficio de su comparecencia, de entender que así procedía resolver.[10] En fin, y como ya consignamos, los planteamientos sometidos por los apelantes para aducir prejuicio por parte del tribunal no son convincentes para evidenciar la conducta imputada, por lo que los errores en los que esta es atribuida no se cometieron.

Habiéndose resuelto ello, nos corresponde evaluar si en base al escrito de la Universidad quedó demostrado la inexistencia de hechos medulares en controversia de forma tal que la resolución sumaria del caso estuviera permitida y si la aplicación del derecho fue correcta. Efectuada esta tarea, concluimos que los hechos materiales y esenciales del presente caso propuestos por la Universidad, y acogidos por el foro primario, no están en controversia.[11] Asimismo, y ante estos, resolvemos que la aplicación del derecho efectuada por el foro primario fue adecuada, por lo que confirmamos la *Sentencia* apelada.

IV.

Por los fundamentos antes enunciados, **confirmamos** la *Sentencia* emitida el 8 de junio de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón en la causa de epígrafe.

---

[10] Al final de cuentas, y como consta el inciso (e) de la Regla 36.3 de Procedimiento Civil, *supra*: la sentencia puede ser dictada inmediatamente "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente."

[11] Si bien, para evidenciar alguno de los hechos propuestos como, por ejemplo, que los apelantes eran empleados a tiempo definido, la Universidad no sometió copia de los contratos, tal omisión no causa que el hecho propuesto no haya sido probado. Al fin y al cabo, la Universidad sometió aquellas porciones en las que estos lo admitían. Tal asunto, es uno de valor probatorio.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones